UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-24757-CIV-ALTONAGA/O'Sullivan

MEGA INTERNATIONAL
TRADE GROUP, INC.,

    Plaintiff,
vs.

A-LINK FREIGHT, INC., *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Trade & Traffic Corp.'s ("Trade & Traffic['s]") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion") [ECF No. 120], filed on May 1, 2015. Plaintiff, Mega International Trade Group, Inc. ("Mega") filed an Opposition . . . ("Response") [ECF No. 138] on May 18, 2015. Trade & Traffic filed a Reply . . . ("Reply") [ECF No. 143] on May 27, 2015. The Court has carefully considered the parties' written submissions and applicable law.

### I.    BACKGROUND

**A. Introduction**

On December 17, 2014, Mega filed a Complaint [ECF No. 1] containing six counts arising from the alleged theft of goods in transit against eight defendants involved in storing or transporting those goods. (*See generally id.*). The First Amended Complaint ("Amended Complaint") [ECF No. 84] states one claim against newly-added Defendant Trade & Traffic: Mega alleges Trade & Traffic was negligent in selecting Twins Transport Service, Inc. ("TTSI") as the drayage carrier for the goods, and the theft was the proximate result of Trade & Traffic's

failure to exercise due care in that selection. (*See id.* ¶¶ 45–49).

### B. Factual Summary

This matter arises out of the sale and transportation of two shipments of Sony camcorders by Mega to customers in the United Arab Emirates in July 2014. (*See id.* ¶ 13). Of the 888 cartons shipped, 667 cartons never arrived at their destination. (*See id.*). At some point in the transportation chain, prior to the containerized shipments being properly sealed, these cartons were removed from their containers. (*See id.*). Mega hired Defendant, A-Link Freight, Inc. ("A-Link"), to coordinate transportation; A-Link in turn engaged Trade & Traffic as its Florida agent, and Trade & Traffic hired the trucking firm TTSI to move the containerized goods from their initial warehouse to the Port of Miami. (*See id.* ¶ 14). After leaving that first warehouse, the 667 cartons were removed from their containers, allegedly by or with the assistance of TTSI employees. (*See id.* ¶¶ 15, 34).

Mega's negligent selection claim is based on six factual allegations and Trade & Traffic's alleged knowledge of the events the allegations describe. First, there were rumors the former owner of TTSI, Frank Menendez ("Menendez"), had problems with theft while employed by a previous trucking firm. (*See id.* ¶ 47.A.). Second, Menendez sold TTSI and was working with a new company in Texas by the time of the events in question. (*See id.* ¶¶ 15, 47.D.). Third, some Trade & Traffic employees believed the TTSI driver who picked up the first shipment, identified only as Ordaz ("Ordaz"), to be dishonest — despite admitting they had no evidence to support this belief. (*See id.* ¶ 47.B.). Fourth, TTSI policy allowed two different drivers to bring goods to and from the TTSI warehouse, whereas industry custom uses the same driver for both legs. (*See id.* ¶ 47.C.). Fifth, TTSI's out-of-service rate was 41.7 percent, higher than the national average of 20.7 percent. (*See id.* ¶ 47.E.). Sixth, and finally, TTSI only carried

insurance for cargo valued at up to $100,000 (*see id.* ¶ 47.F.), an amount insufficient to fully recover a potential loss of the cargo at issue — valued at over $1,000,000 (*see id.* ¶ 13).

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### III. ANALYSIS

Trade & Traffic argues the claim of negligent selection under Florida law brought against it fails to state a claim upon which relief can be granted and should be dismissed. (*See generally* Mot.). To prevail on a negligent selection claim against the employer of a contractor under Florida law, a plaintiff must plead three elements: "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Van Vechten v. Elenson*, 920 F. Supp. 2d 1284, 1295 (S.D. Fla. 2013) (quoting *Davies v. Commercial Metals Co.*, 46 So. 3d 71, 73–74 (Fla. 5th DCA 2010)).[1] A plaintiff must satisfy all three elements to state a claim of negligent hiring. *See id*. The negligent selection inquiry focuses on the contractor's propensity for the kind of behavior that caused the plaintiff's injury, as well as any outward evidence of this specific propensity a reasonable employer could and should have identified: "causation is established by proving the plaintiff's injury was a foreseeable result of the *particular* incompetence." *Davies*, 46 So. 3d at 74 (emphasis added).

### A. Unfitness

Mega alleges unnamed TTSI employees personally stole, or allowed others to steal, Mega's cargo. (*See* Am. Compl. ¶ 34). A contractor's theft of property entrusted to its care is sufficient to satisfy the unfitness element of negligent selection. *See Van Vechten*, 920 F. Supp. 2d at 1294 (allowing a negligent selection claim to proceed against a company that hired a contractor to conduct an estate sale where plaintiff alleged the contractor stole items during the sale). Mega's allegations Trade & Traffic hired TTSI, and TTSI employees stole cargo entrusted

---

[1] Duty must also be shown as a "threshold requirement" to bring a claim of negligent selection *See Davies*, 46 So. 3d at 74.

to their care, are sufficient to satisfy the unfitness element of a negligent selection claim.

### B. Knowledge

The second element Mega must sufficiently plead for negligent selection of an independent contractor is "the employer knew or reasonably should have known of the particular incompetence or unfitness." *Id.* at 1295. Because Mega's injury was caused by theft, the negligent selection claim must allege TTSI's propensity for theft would have been knowable and substantial enough to have dissuaded a reasonable employer from hiring TTSI to transport goods. *See id*. Mega attempts to establish the knowledge element by alleging what can be consolidated into five sets of facts: Trade & Traffic's employees (1) were aware of rumors TTSI's former owner had problems with theft while employed with a different trucking firm, (2) did not believe TTSI's driver Ordaz to be trustworthy, (3) knew or should have known TTSI used two drivers in transit rather than just one, (4) knew or should have known about TTSI's "questionable" safety compliance record, and (5) knew or should have known TTSI did not have adequate insurance for cargo valued at more than $100,000. (*See* Am. Compl. ¶ 47).

#### 1. Rumors About Former Owner

Mega alleges Trade & Traffic's employees knew there were "rumors" about TTSI's "then owner"[2] and his "previous problems with theft while employed with another trucking firm." (*Id.* ¶ 47.A.). Trade & Traffic notes Menendez had already sold TTSI and was out of the state when the theft occurred (*see* Mot. 8), and the Amended Complaint alleges Trade & Traffic employees knew or should have known Menendez no longer owned TTSI and was in Texas. (*See* Am. Compl. ¶ 47.D.).

---

[2] The Amended Complaint refers to Menendez as the "then owner" (Am. Compl. ¶ 47.A.), and later states Menendez sold the company and moved to Texas with a new company (*see id.* ¶ 47.E.). No timeline for these events is provided. It appears Menendez was still with TTSI when the transaction at issue was initiated, but had left by the time of the actual shipments. (*See* Mot. 3 (referring to Menendez as the "former owner")).

Whether an employer knew or reasonably could have known of a contractor's unfitness turns on whether a diligent inquiry into the contractor's background would have uncovered facts to dissuade a reasonable employer from hiring that contractor. *See Malicki v. Doe*, 814 So. 2d 347, 362 n.15 (Fla. 2002) ("Liability in these cases focuses on the adequacy of the employer's pre-employment investigation into the employee's background." (internal citation omitted)). Courts often look to whether there is "any evidence that an appropriate investigation would have revealed [the contractor's] alleged unsuitability," *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1254 (S.D. Fla. 2008) (alterations added), or what facts — if any — the employer "would have discovered through better pre-employment investigation . . . ." *Asset Protection Plans, Inc. v. Oppenheimer & Co., Inc.*, No. 8:11-CV-440-T-23MAP, 2011 WL 2533839, at *6 (M.D. Fla. June 27, 2011) (alteration added).

In *Tallahassee Furniture Co., Inc. v. Harrison*, a furniture company hired a driver/deliveryman who used his position to gain entry to a woman's apartment and attack her. *See* 583 So. 2d 744, 748 (Fla. 1st DCA 1991). The plaintiff argued the furniture company should have known the driver was unfit for the job because, among other infractions, the company knew he had previously been "arrested for violation of probation received in connection with a charge of grand theft." *Id.* at 753. While it affirmed the judgment below against the furniture company on claims of negligent hiring and retention, the court observed "standing alone, mere knowledge that the employee had in the past been subjected to a charge of grand theft in connection with failure to return a television set . . . does not appear to be sufficient to place Tallahassee Furniture on notice that [the driver] was unfit for employment as a deliveryman." *Id.* at 754 (alterations added).

Here, Mega has not alleged Menendez ever committed or was arrested for theft. If a

previous arrest for theft is not sufficient to put an employer on notice about an employee's unsuitability as driver/deliveryman, an unsubstantiated rumor about an owner is even less so. The only other allegation made about Menendez — that he sold TTSI and left the state before the alleged theft — does not raise reasonable suspicion any further.

Mega has pleaded merely a rumor and knowledge of a rumor. (*See* Am. Compl. ¶ 47.A.). Accepting Mega is correct, and Trade & Traffic employees knew of the rumor, Mega has pleaded no facts suggesting a more in-depth investigation of TTSI or Menendez would have uncovered evidence of a propensity for theft. Without more, an unsubstantiated rumor about TTSI's former owner at a different job does not provide notice theft is likely at the company he previously owned and sold.

Even if Menendez had an established record of thefts, and again, Mega has pleaded no such record, it is unclear how Mega can simultaneously attempt to use both Menendez's former ownership *and* his subsequent departure from TTSI to suggest a known propensity for theft by the company. If Menendez's presence at TTSI was a stain, his subsequent departure, on its own and without any additional facts, does not further cement the company's alleged disrepute. *See Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (In considering a motion to dismiss "courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." (alteration in original; internal quotation marks and citations omitted)). Without facts showing Menendez was somehow involved in or orchestrated this theft, or any facts suggesting a history of theft at TTSI, rumors about Menendez's character and details of his whereabouts are nothing more than "conclusory allegations [and] unwarranted deductions of facts," that "will not prevent dismissal." *Snow v.*

7

*DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (alteration added; internal quotation marks and citation omitted).

### 2. Trustworthiness of Driver

Mega next alleges Trade & Traffic's employees knew the TTSI driver who picked up the first shipment — Ordaz — and "did not think Ordaz was trustworthy." (Am. Compl. ¶ 47.B.). Yet the Amended Complaint concedes these employees had "no evidence of dishonesty" upon which to base their belief. (*Id.*). Again, even making all assumptions in Mega's favor, this allegation lacks a factual foundation rising above speculative general suspicion. Even more so than the allegations about Menendez, the only fact pleaded in this subparagraph is an explicitly unsubstantiated personal belief about Ordaz. Even were Ordaz a demonstrably dishonest man, which has not been pleaded, that conclusion alone would not necessarily make it negligent for Trade & Traffic to hire Ordaz personally,[3] no less TTSI, which similarly lacks any alleged history of theft, to transport what were supposed to be sealed containers.

Mega tries to distinguish Trade & Traffic's cited authorities, *Stander v. Dispoz-O-Products, Inc.*, 973 So. 2d 603 (Fla. 4th DCA 2008); and *Rivers v. Hertz Corp.*, 121 So. 3d 1078 (Fla. 3d DCA 2013), arguing the plaintiffs in those cases did not allege facts supporting negligence claims. (*See* Resp. 7). But the facts alleged here are wanting as well. Because there is no allegation Ordaz or TTSI had any history of theft, Mega has pleaded no facts to show Trade & Traffic would have turned up a propensity for theft even if it had made a fuller investigation of the driver and his employer. Additionally, these cited cases only suggest there is no inherent duty[4] to third parties when an employer hires a trucking company; they do not address the

---

[3] *See Tallahassee Furniture Co.*, 583 So. 2d at 754.

[4] Trade & Traffic cites *Stander* for its holding "in the absence of factual allegations as to why someone who hires an independent contractor to transport goods should conduct an investigation into the

knowledge element.  *See Stander*, 973 So. 2d at 605; *Rivers*, 121 So. 3d at 1080.

### 3. Two-Driver Policy

Mega accuses Trade & Traffic employees of having known TTSI allowed different drivers to transport containers to and from the TTSI terminal, despite a local industry custom of using the same driver for both legs of such trips.  (*See* Am. Compl. ¶ 47.C.).  Mega does not explain how this fact, accepted as true, would have caused a reasonable actor to suspect TTSI of a propensity for theft.  Logistical decisions such as this do not appear to have any bearing on trustworthiness or theft prevention, and Mega has pleaded no facts to suggest this policy contributed in any way to the theft.  *See Kivisto*, 413 F. App'x at 138.  Neither Mega's Complaint nor its Response explains how knowledge of this policy would factor into a reasonable person's conclusion TTSI might pose a risk for theft.

### 4. Safety Record

Mega argues Trade & Traffic's employees knew or should have known TTSI had a safety compliance record characterized as "questionable" (Am. Compl. ¶ 47.E.) and "less than commendable" (Resp. 5).  Trade & Traffic argues safety records have nothing to do with a propensity for or vulnerability to theft.  (*See* Mot. 12).  In its Response, Mega attempts to reframe its position: "The gravamen of Count V is that a reasonable truck broker would not have arranged the transport of these shipments of high value cargo by [TTSI] not only because of possible concerns about cargo theft, but also because of safety concerns." (Resp. 5).  But this statement erroneously broadens the scope of inquiry.  Nothing in Mega's Response does anything to undercut Trade & Traffic's argument Mega has failed to establish the knowledge

---

background, qualifications, or experience of the driver, there is no duty to third parties." (Mot. 10 (quoting *Stander*, 973 So. 2d at 605)).  According to Mega, there is a duty based on common law precedent for selecting carriers, particularly because of the inherent dangers to the public involved with commercial trucking.  (*See* Resp. 6 (quoting *Jones v. C.H. Robinson Worldwide, Inc.*, 558 F. Supp. 2d 630 (W.D. Va. 2008))).

element as laid out in Mega's own Response: "(2) the employer knew or reasonably should have known of *the particular* incompetence or unfitness . . . ." (Resp. 5 (quoting *Davies*, 46 So. 3d at 74 (alteration and emphasis added))). That is why the safety record described in the pleading fails to support Mega's negligent selection claim.

### 5. Insurance

Mega pleads Trade & Traffic employees knew or should have known "TTSI did not have adequate insurance for shipments having a value exceeding $100,000." (Am. Compl. ¶ 47.F.). The inference appears to be Trade & Traffic's selection was negligent because TTSI would be unable to make Mega whole should the cargo be damaged or lost.[5] In the Response, however, Mega argues the selection of TTSI was negligent because "Trade & Traffic did not have evidence TTSI had adequate cargo insurance *in the sum of* $100,000, the custom and practice of like carriers in the industry." (Resp. 5 (emphasis added)). In other words, Trade & Traffic's selection was negligent because of its carelessness in hiring a potentially under-insured contractor.

Again, the Amended Complaint asserts a negligent selection claim only on the basis of theft, not failure to adequately insure. *See Van Vechten*, 920 F. Supp. 2d at 1295. The Court agrees with Trade & Traffic no amount of insurance coverage or lack thereof could put Trade & Traffic on notice of a propensity for theft. Like the safety-record allegation, this subparagraph provides no support for the element of knowledge.

### C. Causation

Mega alleges the theft was a proximate result of Trade & Traffic's failure to exercise due

---

[5] Indeed, in its Response, Mega characterizes this subparagraph as "suggest[ing] that if there was an incident involving loss of [sic] damage to Mega's cargo, TTSI could not respond and pay a claim." (Resp. 7 (alterations added)).

care in selecting a drayage carrier. (*See* Am. Compl. ¶ 48). To state a claim for negligent selection, Mega must allege the employer, Trade & Traffic, knew or reasonably should have known of the specific propensity of the independent contractor which was the proximate cause of the injuries — in this case, theft. (*See* Mot. 8 (citing *Brien v. 18925 Collins Ave. Corp.*, 233 So. 2d 847, 849 (Fla. 3d DCA 1970); *Sammons v. Broward Bank*, 599 So. 2d 1018, 1019 (Fla. 4th DCA 1992))). "[C]ausation is established by proving the plaintiff's injury was a foreseeable result of the particular incompetence." *Davies*, 46 So. 3d at 74 (alteration added). Inferences leading to conclusions about traits beyond propensity for the particular unfitness that caused plaintiff's injury do not establish causation. *See Garcia v. Duffy*, 492 So. 2d 435, 441 (Fla. 2d DCA 1986) ("[A]n employer who learns of an employee's conviction for petit theft cannot be deemed liable, on the basis of negligent retention upon constructive or actual notice of that crime, for the employee's subsequent rape of a customer." (alterations added)).

### 1. TTSI Personnel and Driver Policies

There are no allegations Menendez and/or Ordaz were involved in the theft, or that TTSI's two-driver policy facilitated the theft. As above, the factual allegations about Menendez and Ordaz fail to support a discernible propensity for theft sufficient to establish the causation element for negligent selection. Mega recognizes the weakness of these factual allegations and proposes their collective whole may be greater than the sum of the parts: "while each of the[se] . . . four factors may not, standing alone, be sufficient, their totality is sufficient to support a claim of negligence." (Resp. 5). The Court disagrees. None of these factors alone properly supports an inference of TTSI's propensity for theft; considering them together does not create a stronger inference.

### 2. Safety

Mega argues Trade & Traffic's selection of a drayage carrier with a "questionable" safety record establishes causation (Am. Compl. ¶ 47.E.), but there is no allegation public safety or lack thereof played any role in Mega's injury. Even if, as Mega argues, public safety is a major reason for licensing requirements for commercial drivers and drayage carriers, and even if commercial trucking is inherently dangerous enough for attendant duties to arise (*see* Resp. 8), public endangerment is not the propensity that caused Mega's injury.[6]

Indeed, although allegations of a trucking company's known poor safety record can state a claim for negligent hiring when a plaintiff's injuries are caused by a traffic accident, even then the claim cannot succeed unless the particular alleged safety deficiency is causally related to the specific traffic accident. *See Davies*, 46 So. 3d at 72–74 (holding allegation of a trucking company's habitual violation of driving-hour limits was sufficient to overcome a motion to dismiss, but could not survive summary judgment because it was uncontested the truck driver had gotten a full night's sleep and had not violated the driving limits on the days of and preceding the accident). Here, unlike in *Davies*, there is not even an allegation safety played any role in Plaintiff's injury.

Mega also states any employer "carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of

---

[6] Mega identifies an exception to the general rule an employer is not liable for the torts of an independent contractor if the contractor is engaged in inherently dangerous work. (*See* Resp. 8 (citing *Brien*, 233 So. 2d at 848)). But even for such inherently dangerous activities, the employer is only liable if there is a causal connection between the plaintiff's injury and the special dangers that make the activity inherently dangerous. *See Hirschenson v. Westway Inc.*, 728 So. 2d 1216, 1218 (Fla. 3d DCA 1999) (reversing summary judgment on a negligent selection claim regarding a contractor's inherently dangerous demolition work because "the plaintiff's injury in this case was not occasioned by demolition work"); *see also Madison v. Midyette*, 541 So. 2d 1315, 1318 (Fla. 1st DCA 1989) (discussing liability for contractors conducting inherently dangerous activities properly attaches to injuries inflicted both by the act itself and "its natural consequence").

harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor . . . ." (Resp. 8 (quoting RESTATEMENT (SECOND) OF TORTS § 428 (1965) (alteration added))). Yet, again, this does not satisfy causation because Mega's harm was not caused by what makes commercial trucking inherently (and physically) dangerous.

### 3. Insurance

Last, Mega argues causation is satisfied because "subparagraph F suggests if there was an incident involving loss of damage to Mega's cargo, TTSI could not respond and pay a claim. And in fact TTSI has now defaulted." (*Id.* 7). Mega's injury is certainly a financial loss, but it is a loss from theft. Greater insurance coverage may help offset or redress a financial loss, but it cannot be argued TTSI's insufficient level of coverage *caused* this theft. And as explained, this new characterization of TTSI's alleged insurance deficiency is not presented in the Amended Complaint.

### IV.   CONCLUSION

Drawing all inferences in Mega's favor, Mega does not plead facts sufficient to satisfy all elements required for a claim of negligent selection of an independent contractor. Accordingly, the Motion **[ECF No. 120]** is **GRANTED**. The claim asserted in the Amended Complaint **[ECF No. 84]** against Defendant, Trade & Traffic, is **DISMISSED** without prejudice.[7]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of June, 2015.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

---

[7] March 13, 2015 was the deadline to amend pleadings. (*See* Scheduling Order [ECF No. 33]).